```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                        NASHVILLE DIVISION
```

**HEWLETT-PACKARD COMPANY,**      )
                                  )
        **Plaintiff,**           )
                                  )
    v.                          )   **Civil No. 3-04-0779**
                                  )   **Judge Echols**
**CAPITAL CITY MICRO, INC.,**     )
**MARTIN MEEKS, D.E.W.**          )
**DISTRIBUTING CO., INC. d/b/a**  )
**P & E DISTRIBUTING CO. and**    )
**DAVID E. WELKER,**              )
                                  )
        **Defendants.**          )

## MEMORANDUM

Pending before the Court is Defendants D.E.W. Distributing Co., Inc. d/b/a P & E Distributing Co. ("P & E") and David E. Welker's ("Welker") (collectively "P & E Defendants") Motion for Summary Judgment (Docket Entry No. 75) to which Plaintiff Hewlett-Packard Company ("HP") has responded in opposition (Docket Entry No. 80) and the P & E Defendants have replied (Docket Entry No. 86).

### I. INTRODUCTION

Hewlett-Packard filed this diversity action against Defendants Capital City Micro, Inc. ("Capital City"), its President, Martin Meeks,[1] P & E, and its President, Welker. (Docket Entry No. 1). In a five-count Complaint, HP asserts breaches of contract by

---

[1] Because Defendant Meeks filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee, the action against him is stayed pending resolution of the bankruptcy proceedings. (Docket Entry No. 40). The Clerk has entered a default against Defendant Capital City. (Docket Entry No. 37).

1

Capital City (Counts I & II), common law fraud and civil conspiracy against all Defendants (Counts III & IV), and unjust enrichment against P & E, Meeks and Welker (Count V). (Id.)

HP contends that Defendants engaged in a fraudulent scheme to wrongfully acquire computer products at significantly discounted prices from both HP and its predecessor-in-interest, Compaq Computer Corporation ("Compaq"),[2] and then sell those products to unauthorized recipients in the international "grey market" instead of to authorized end-users. For that alleged malfeasance, HP seeks $8,674,188.00 in damages which it claims represents the amount of computer product discounts allegedly wrongfully obtained from HP and Compaq.

The P & E Defendants have filed a Motion for Summary Judgment with respect to the claims for fraud, civil conspiracy, and unjust enrichment asserted against them. With regard to the fraud count, those Defendants assert that HP cannot prove the existence of damages, let alone the amount of damages it has allegedly incurred as a result of the wrongful conduct. Because damages are an essential element of a fraud claim, that claim must fail as must the claim for civil conspiracy, since it is based upon the viability of the claim for fraud. The P & E Defendants also assert that the claim for unjust enrichment must fail because HP has no evidence to prove that those defendants ever received services or goods from HP.

---

[2]HP and Compaq merged in May 2002 with HP assuming the rights of Compaq.

## II. FACTUAL BACKGROUND

The factual allegations underlying this case were thoroughly reviewed in this Court's Memorandum relating to Defendants P & E and Welker's Motion to Dismiss (Docket Entry No. 48). For present purposes, those factual allegations are summarized to place the parties' present arguments in perspective. After this summary, the Court will turn to the specific facts underlying the present motion for summary judgment.

HP is a provider of computer products (among other things) and sells those products through a multi-tier distribution system comprised of authorized independent distributors and resellers. Ultimately, the products are sold to customers or "end-users."

One category of authorized HP reseller within this system is the "Second-Tier Reseller." The Second-Tier Reseller is required to enter into and operate under a reseller agreement with HP ("HP Reseller Agreement"). Under the HP Reseller Agreement, the Second-Tier Reseller is authorized to purchase HP products from authorized HP distributors and resell HP products only to end-users in the United States. In March of 2000, Capital City became a Second-Tier Reseller for HP.[3]

HP has a pricing program called the "Big Deal" program which allows authorized resellers to provide competitive pricing to qualified, large-volume end-users. To obtain this competitive

---

[3] The Court recognizes that Meeks testified in his deposition he has no recollection of ever signing a reseller agreement with HP and that the signature which appears on the bottom of the Reseller Agreement is not his signature. (Meeks Depo. at 154-155).

3

pricing, a Second-Tier Reseller must submit a request for a Big Deal Quote to HP and provide specific information regarding the identity of the specific end-user and the number of items to be purchased. If HP approves the request, the Second-Tier Reseller can file a claim with HP for reimbursement of the difference between the price paid by the Second-Tier Reseller and the discounted price reflected in the Big Deal Quote.

On March 14, 2001, Meeks, as president and director of Capital City, contacted HP to discuss entering into a "Big Deal," whereby, on a monthly basis for one year, Capital City would purchase 1,500 laptop computers from HP for resale and shipment to its designated end-user, P & E, an Anheuser-Busch beer distributor. An agreement was reached and from March to October 2001, Capital City ordered HP products at substantially-discounted prices for alleged resale to P & E and submitted invoices to HP reflecting the alleged sales to P & E.

In September 2001, HP discovered that printers sold by it to Capital City for resale to P & E had been improperly sold in Saudi Arabia. After inquiring of Meeks about the printers and receiving no adequate explanation or response from him, HP issued an invoice to Capital City in the amount of $2,935,222.00 representing Capital City's unearned discount on the purchases which were made pursuant to the Big Deal identifying P & E as the end-user.

HP alleges a similar scenario with respect to Compaq computers. Prior to its merger with HP, Compaq, which also manufactured computer products, had a two-step distribution system

4

consisting of authorized distributors and authorized resellers ("Compaq Authorized Resellers"). The Compaq Authorized Resellers were required to enter into a Compaq Authorized Reseller Sales Agreement which prohibited them from selling to anyone other than end-users in the United States. Compaq also maintained a sales pricing program, similar to HP's "Big Deal," which was known as the Targeted Opportunity for Strategic Sales ("TOSS") program.

From March to August 2002, Capital City submitted to Compaq approximately twenty purchase orders for various Compaq products purportedly to be resold to P & E pursuant to the TOSS program. Pursuant to these purchase orders signed by Welker, Compaq shipped the requested Compaq products to Capital City at discounted prices, with discounts totaling $5,738,966.00. Ultimately, HP discovered Compaq products in Canada that, according to HP's records, should have gone to P & E.

The foregoing allegations, which are derived from HP's Complaint, set the framework for the specific facts which relate to the presently pending Motion for Summary Judgment. Those facts, construed in HP's favor, are as follows.

Even prior to its dealings with Compaq and HP, Capital City had wrongly designated P & E as the end-user of its computers. In 2000, P & E received notification from Toshiba that P & E was considered to be a class member for purposes of a class action settlement because P & E had been listed as a purchaser of millions of dollars worth of computers. (Welker Depo. at 61-62). In fact, P & E made no such purchases of Toshiba products. (Id.; Dutton

5

Depo. at 20). Although Welker knew P&E had been listed as an end-user by Capital City for the Toshiba computers, he refused to sign the Class Action Claim Form because he did not feel comfortable doing so. (Id. at 66, 88-89). Nevertheless, a claim form was submitted and ultimately P & E was awarded approximately 2.8 million dollars which Meeks and Welker split. (Id. at 105).

P & E's ruse of being a large end-user of computers from Capital City continued in representations made to Compaq and HP. Meeks and Welker met with HP representatives in Clarksville, Tennessee, to discuss a proposed Big Deal. During the course of that lunch, Welker was thanked for his expected business and he replied "you're welcome." (Swikle Depo. at 78). Capital City and P & E were repeatedly reminded that P & E was to be the end-user and that the computers could not be sold elsewhere, such as on the grey market. (Bullock Depo. at 29). Meeks repeatedly assured Compaq that the computers would go to P & E. (Gross Depo. at 139-140; Sayles Depo. at 102).[4] Capital City purchased the Compaq products pursuant to Compaq's discount agreement with Anheuser-Busch and did not receive any further discount than that provided for in the agreement between Anheuser-Busch and Compaq. (Pf. SOF ¶¶ 13-14).

P & E's alleged status as an end-user continued. On March 14, 2002, Welker submitted an e-mail message to Compaq endorsing

---

[4] However, it was understood by the HP representatives that P & E might distribute to other Anheuser-Busch distributors and there was no problem with that arrangement. (Sayles Depo. at 99 & 101).

6

Capital City as a supplier of computer hardware and software because P & E had a four-year relationship with Capital City and Capital City was attentive to detail and provided exceptional service. (Docket Entry No. 80, Ex. 25). In that same month, after Compaq had sought written instructions from Capital City's end-user confirming the shipment destination of any Compaq products that Capital City ordered, Mr. Welker sent an e-mail to Compaq and expressly confirmed that all orders for Compaq products were to be shipped directly to Capital City's facility in Murfreesboro, Tennessee, so as to "facilitate [P&E's] configuration of [its] software and upgrading of hardware." (Id. Ex. 26).

Because of the misrepresentation of the end-user, HP claims damages in the amount of $2,935,222.00 with respect to the sales made by HP to Capital City. (Pf. SOF ¶ 5). That figure purportedly represents the difference between what Capital City paid for the products pursuant to the "Big Deal" discount and the price that HP generally made available to resellers for those products. (Colesberry Depo. ¶¶ 16, 26).

HP also claims damages in the amount of $5,738,966.00 for the sales made by Compaq to Capital City. (Pf. SOF ¶ 5). That figure purportedly represents the difference between the discounted prices that Capital City received pursuant to Compaq's special pricing arrangement with Anheuser-Busch and Compaq's list price which is the price at which Compaq would have sold the products had no discounts been provided. (Colesberry Depo. at 56-57, 86).

7

HP has no evidence that P & E received any benefits from the discounts Capital City received in its dealing with HP or Compaq. (Pf. SOF ¶ 3). Nor does HP have any evidence that Welker received any benefit from the deals between Capital City and HP and Compaq. (Id.).

Generally, HP only sells its products to those who have an agreement or contract with HP which provides some sort of discount off the list price. (Colesberry Depo. at 88-89). HP cannot identify exactly what prices another distributor, reseller or end-user may have paid for the products Capital City purchased from HP. (Pf. SOF ¶ 10 & Def. Resp. to ¶ 10). It contends, however, that the prices to other distributors or resellers would likely be higher than that paid by Capital City. (Id.).

### III. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

8

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. LEGAL ANALYSIS

The P & E Defendants have moved for summary judgment with respect to all of the claims asserted against them. Those claims include common law fraud (Count III), civil conspiracy (Count IV) and unjust enrichment (Count V).

### A. Common Law Fraud

The P & E Defendants' motion for summary judgment on HP's claim of common law fraud presents a narrow issue. Those Defendants assert that HP cannot establish a jury question as to whether it actually suffered any damages (which is an essential element of the claim) and that, if it could establish the existence

9

of damages, HP cannot establish the amount of damages beyond mere speculation.

"Under Tennessee law, '[t]he elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, . . . without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact.'" Menuskin v. Williams, 145 F.3d 755, 764 (6th Cir. 1998)(citation omitted).[5] Therefore, to recover on a fraud claim, Plaintiff must "prove the existence of some damages[.]" French v. First Union Securities, Inc., 209 F.Supp.2d 818, 825 (M.D. Tenn. 2002).

The P & E Defendants argue that HP cannot establish it was in fact damaged by their allegedly fraudulent acts. They assert that HP is in essence claiming "lost profits" because of the sales made to Capital City. (Docket Entry No. 76 at 6). According to the P & E Defendants, HP cannot prove the existence of damages because HP admits that it is impossible to say how much it would have sold its products for had Capital City not purchased them. (Id. at 8). In fact, HP has admitted that HP's products have been sold to

---

[5]In the absence of a conflict in the law which could conceivably govern the substantive issues presented, a district court is to apply the law of the state in which it sits. Rosen v. Chrysler Corp., 205 F.3d 915, 921 (6th Cir. 2000). In this case there appears to be no conflict in other states' laws which could possibly apply (Kentucky where P & E is incorporated and Welker resides, or California where HP has its principal place of business) and the parties agree that Tennessee law should govern this dispute. Accordingly, the Court looks to Tennessee substantive law in rendering its opinion.

10

resellers at less, the same, or even a greater discount than that granted to Capital City. (Id.). Because lost profits are "unknowable," no reasonable jury could find the existence of damages to a reasonable degree of certainty.

In response, HP argues that the P & E Defendants do not understand the nature of HP's damage claim. The claim is not for lost profit but rather that HP should be refunded the savings that Capital City and P & E reaped as a result of the allegedly fraudulent scheme designating P & E as the end-user. That is, HP is seeking its actual damages in the form of the discounts that HP and Compaq would not otherwise have offered to Capital City except for the allegedly fraudulent misrepresentations.

"The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." Harrogate Corp. v. Systems Sales Corp., 915 S.W.2d 812, 817 (Tenn. App. 1995). In other words, the proper measure for damages in a fraud case "is the benefit of the bargain rule." Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 233 (Tenn. App. 1976) (citing Ford Motor Co. v. Lonon, 398 S.W.2d 240 (Tenn. 1966)).

HP has pointed to testimony from sales representatives for both HP and Compaq who indicated that in reliance on the Defendants' misrepresentation that P & E was to be the end-user, they sold their products to Capital City at highly discounted rates. (Sayles Depo. 129-130; Swickle Depo. 130-134; Platt Depo.

11

154). What is more, HP has provided deposition testimony that had HP been told the truth - that P & E was not an end-user and in fact had no intention of purchasing any of the products - HP would not even have sold the products to Capital City. (Sayles Depo. 98-99; Swickle Depo. 88, 104; Gross Depo. 35-36; Bullock Depo. 107-108).

Such evidence supports HP's contention that Capital City wrongfully received discounts. Despite such evidence, the P & E Defendants maintain they are entitled to summary judgment on the fraud claim because no one can point to the precise figure at which the products would have been sold to Capital City had there been no discount and because resellers commonly received discounts off of the list price. As such, to allow damages based upon the difference between the list price and the discount would be to place HP in a *better* position than it would have been had there been no deal between it and Capital City in the first place.

While it is true that damages for fraud are intended to place the deceived party in the position it would have been had there been no fraudulent conduct, it does not follow that no damages are appropriate in this case. Assuming liability is established, it really becomes a question of degree of damages and that is a question for the jury. For now, the Court concludes HP has presented a viable damage theory - it should be entitled to recover the wrongfully received discounts - whatever those may turn out to be.

P & E and Welker's related claim that HP cannot prove the *amount* of damages must also be rejected. True, damages based upon

12

pure speculation are not recoverable. However, damages are recoverable "even if it is impossible to prove the exact amount of damages . . . [o]therwise, in certain instances, the courts would be powerless to help some wronged parties." Dunn v. Matrix Exhibits, Inc., 2005 WL 2604048 at *5 (Tenn. Ct. App. 2005). Simply put, "'the law does not require exactness of computation in suits that involve questions of damages growing out of contract or tort.'" Provident Life and Accident Ins. Co. v. Globe Indemnity Co., 576, 3 S.W.2d 1057, 1058 (Tenn. 1928).

Here, the requested damages are not based merely on speculation. HP places its damages in relation to the "Big Deal" program sales to Capital City at $2,935,222.00 which purportedly is the deference between what Capital City paid for the products and the prices that HP generally made available to its resellers. As for those made under the TOSS program, HP places its damages at $5,738,966.00 which purportedly represents the difference between Compaq's list prices and the special pricing arrangement which had been made with Anheuser-Busch.

In reaching the conclusion that the requested damages are not speculative, this Court is aware of the P & E Defendants' argument that HP regularly discounted its product at less than "list price" and always sold to resellers at a discount. To the extent that this is true, these are facts which can be presented to the jury as a way for the jury to reduce any damage award should it deem damages appropriate. It is not, however, a basis for granting

13

summary judgment on the grounds that damages cannot be established beyond mere guess-work.

Similarly, the fact that Colesberry, HP's corporate representative, testified in his deposition that "[i]t's impossible to say" at what price HP would have sold the products to someone else had it not sold them to Capital City is not dispositive.[6] While it might be true, as the P & E Defendants suggest, that "it stands to reason that Colesberry would be the most knowledgeable person about the discounts and rebates given" (Docket Entry No. 86 at 6) since he is the department manager of special pricing and discounts and was the United States Big Deal rebate manager, others have testified that the discounts given to Capital City were "steep" with the inference being that they were more than those generally provided to resellers. This somewhat divergent testimony presents a question of fact for the jury.

Finally, the Court rejects the P & E Defendants' assertion that HP's response to Welker's interrogatories precludes HP's claim for damages. In response to Interrogatory number 24, HP indicated

---

[6]Insofar as the P & E Defendants are arguing that Colesberry's testimony is the only testimony which may be considered, that argument must be rejected. See, A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001)(Rule 30(b)(6) does not "absolutely bind a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or inaccessible" because "[n]othing in the advisory committee notes indicates that the Rule goes so far"); Industrial Hard Chrome, Ltd. v. Hetran, Inc., 92 F.Supp.2d 786, 791 (N.D.Ill. 2000) (Rule 30(b)(6) "testimony is not a judicial admission that ultimately decides an issue. The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes.")

14

that "both HP and Compaq sold their respective products at a discount off of their list prices" and that "HP seeks no other category of compensatory damages other than the total discounts off of list price." (Docket Entry No. 86, Ex. A, ¶ 24). Even if no one else ever paid list price, this would not mean HP suffered no damages - only that the basis for damages might not be the list price. Moreover, in response to the Interrogatory, HP was referencing the "category" of damages and undoubtedly would like to recover the difference between the list price and the discounts. Whether it will be successful in that regard because of the apparent dearth of evidence to suggest anyone paid list price is a different issue from whether HP is entitled to seek that category of damages. Again, a factual question is presented and therefore summary judgment is unwarranted.

**B. Civil Conspiracy Claim**

The P & E Defendants' motion for summary judgment on HP's civil conspiracy claim hinges upon its success with respect to their motion regarding the fraud claim. That is, because there can be no liability for a civil conspiracy unless there is wrongful conduct, "if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail." Levy v. Franks, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).

In this case, the Court has concluded that HP has presented a viable fraud claim. Accordingly, P & E and Welker's motion for summary judgment on HP's civil conspiracy claim must be denied.

15

**C. Unjust Enrichment Claim**

In order to prevail on an unjust enrichment claim, a plaintiff must establish that a defendant received goods or services from the plaintiff. CBP Management Inc. v. Everly, 939 S.W.2d 950, 955 (Tenn. Ct. App. 1996). In this case, HP admits that it lacks any evidence which would show that Welker or P & E received any goods or services from HP and in fact consents to dismissal of its claim of unjust enrichment as to those two defendants. (Docket Entry No. 80 at 14). Accordingly, summary judgment will be granted with respect to HP's claim for unjust enrichment as set forth in Count V of the Complaint against Defendants P & E and Welker.

## IV. CONCLUSION

On the basis of the foregoing, Defendants D.E.W. Distributing Co., Inc. d/b/a P & E Distributing Co. and David E. Welker's Motion for Summary Judgment (Docket Entry No. 75) will be granted in part and denied in part. The Motion for Summary Judgment will be granted only with respect to Plaintiff's claims for unjust enrichment against Defendants P & E Distributing Co. and David E. Welker. In all other respects, the motion will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE